## PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name  Conolly, Michael J.
      (Last)        (First)        (Initial)

Prisoner Number  P-52999

Institutional Address CSP-Solano, P.O. Box 4000, Vacaville, CA 95696-4000

================================================================

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

MICHAEL JOSEPH CONNOLLY,
(Enter the full name of plaintiff in this action.)

                                    CV 08 2797

                    vs.                          Case No. _____
                                                 (To be provided by the clerk of court)
D. K. SISTO, Warden,

_____              PETITION FOR A WRIT
                                       OF HABEAS CORPUS
_____

_____

_____              E-filing

(Enter the full name of respondent(s) or jailor in this action)

================================================================

### Read Comments Carefully Before Filling In

#### When and Where to File

You should file in the Northern District if you were convicted and sentenced in one of these

counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

this district if you are challenging the manner in which your sentence is being executed, such as loss of

good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

        If you are challenging your conviction or sentence and you were not convicted and sentenced in

one of the above-named fifteen counties, your petition will likely be transferred to the United States

District Court for the district in which the state court that convicted and sentenced you is located. If

you are challenging the execution of your sentence and you are not in prison in one of these counties,

your petition will likely be transferred to the district court for the district that includes the institution

where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS        - 1 -

<u>Who to Name as Respondent</u>

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack was entered.

<u>A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

1. What sentence are you challenging in this petition?

(a)   Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

<u>San Mateo County Superior Court</u>          <u>Redwood City, CA</u>

Court                                        Location

(b)   Case number, if known <u>SC052903A</u>

(c)   Date and terms of sentence <u>January 16, 2004; 39 years to life.</u>

(d)   Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.)          Yes <u>XX</u>          No _____

Where?

Name of Institution: <u>California State Prison - Solano</u>

Address: <u>P.O. Box 4000, Vacaville, CA 95696-4000</u>

2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

<u>Second degree murder with a knife (P.C. §§187(a), 12022(b)); prior serious</u>
<u>felony (P.C. §667(a)); prior "strike" (P.C. §1170.12(c)(1)); 3 prior prison</u>
<u>terms (P.C. §667.5(b)).</u>

3.  Did you have any of the following?

    Arraignment:                           Yes <u>XX</u>     No _____

    Preliminary Hearing:              Yes <u>XX</u>     No _____

    Motion to Suppress:              Yes <u>XX</u>     No _____

4.  How did you plead?

    Guilty _____    Not Guilty <u>XX</u>    Nolo Contendere _____

    Any other plea (specify) _____

5.  If you went to trial, what kind of trial did you have?

    Jury <u>XX</u>    Judge alone_____    Judge alone on a transcript _____

6.  Did you testify at your trial?            Yes <u>XX</u>     No _____

7.  Did you have an attorney at the following proceedings:

    (a)    Arraignment             Yes <u>XX</u>     No _____

    (b)    Preliminary hearing     Yes <u>XX</u>     No _____

    (c)    Time of plea             Yes <u>XX</u>     No _____

    (d)    Trial                   Yes <u>XX</u>     No _____

    (e)    Sentencing             Yes <u>XX</u>     No _____

    (f)    Appeal                Yes <u>XX</u>     No _____

    (g)    Other post-conviction proceeding     Yes _____     No <u>XX</u>

8.  Did you appeal your conviction?          Yes <u>XX</u>     No _____

    (a)    If you did, to what court(s) did you appeal?

              Court of Appeal          Yes <u>XX</u>     No _____

              Year: <u>2006</u>      Result: <u>Affirmed</u>

              Supreme Court of California    Yes <u>XX</u>     No _____

              Year: <u>2006</u>      Result: <u>Review denied</u>

              Any other court          Yes _____     No <u>XX</u>

              Year: _____      Result:_____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS      - 3 -

petition?                                    Yes <u>XX</u>        No_____

(c)    Was there an opinion?                 Yes <u>XX</u>        No_____

(d)    Did you seek permission to file a late appeal under Rule 31(a)?

                                             Yes _____       No <u>XX</u>

       If you did, give the name of the court and the result:

       _____

       _____

9.  Other than appeals, have you previously filed any petitions, applications or motions with respect to

this conviction in any court, state or federal?          Yes <u>XX</u>        No_____

       [Note:  If you previously filed a petition for a writ of habeas corpus in federal court that

challenged the same conviction you are challenging now and if that petition was denied or dismissed

with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

for an order authorizing the district court to consider this petition.  You may not file a second or

subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit.  28

U.S.C. §§ 2244(b).]

       (a)    If you sought relief in any proceeding other than an appeal, answer the following

              questions for each proceeding.  Attach extra paper if you need more space.

       I.     Name of Court: <u>San Mateo County Superior Court</u>

              Type of Proceeding: <u>Habeas corpus</u>

              Grounds raised (Be brief but specific):

              a. <u>Ineffective assistance of counsel: failure to properly</u>
                 <u>move to strike a prior conviction.</u>
              b. <u>Ineffective assistance of appellate counsel: failure to</u>
                 <u>raise the issue of denial of motion to strike a prior.</u>
              c. <u>Ineffective assistance of counsel: faiure to object to</u>
                 <u>evidence of victim's character.</u>
              d. _____

              Result: <u>Denied</u>                    Date of Result: <u>February 16, 2007</u>

       II.    Name of Court: <u>Court of Appeal, First Appellate District</u>

              Type of Proceeding: <u>Habeas corpus</u>

              Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS          - 4 -

a. All grounds same as in Superior Court.

b.

c.

d.

Result: Denied                Date of Result: 4-19-07

III.    Name of Court: California Supreme Court

Type of Proceeding: Habeas corpus

Grounds raised (Be brief but specific):

a. All grounds same as in Superior Court.

b.

c.

d.

Result: Denied                Date of Result: 11-14-07

IV.    Name of Court:

Type of Proceeding:

Grounds raised (Be brief but specific):

a.

b.

c.

d.

Result:                Date of Result:

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes ____    No xx

Name and location of court:

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS        - 5 -

1   need more space. Answer the same questions for each claim.

2       [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3   petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5       Claim One:___See p. 8._____

6       _____

7       Supporting Facts:_____

8       _____

9       _____

10      _____

11      Claim Two:___See p. 11._____

12      _____

13      Supporting Facts:_____

14      _____

15      _____

16      _____

17      Claim Three:___See p. 13._____

18      _____

19      Supporting Facts:_____

20      _____

21      _____

22      Ground Four: p. 14; Ground Five: p. 18; Ground Six: p. 18.

23      If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25  All grounds have been presented to the highest state court.

26  _____

27  _____

28  _____

1        List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3    of these cases:

4    See Memorandum of Points and Authorities submitted herewith.

5    _____

6    _____

7    Do you have an attorney for this petition?        Yes_____    No XX

8    If you do, give the name and address of your attorney:

9    _____

10       WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11   this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13   Executed on May 18, 2008 _____        _Michael Connolly_____

14                  Date                              Signature of Petitioner

15

16

17

18

19

20   (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS      - 7 -

<div align="center">

GROUND ONE

EXCLUSION OF EVIDENCE OF THE VICTIM'S AGGRESSIVE CONDUCT
IN VIOLATION OF THE RIGHT TO PRESENT A DEFENSE UNDER THE SIXTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

</div>

Petitioner was charged with murder after stabbing his roommate George Celentano to death.  Petitioner maintained that Celentano attacked him and that he acted in self-defense.

Evidence at the trial showed that petitioner and Celentano were friends. RT 1682.  Witnesses agreed that Celentano was quite abusive verbally (RT 1683-84, 1694, 1730), but none had seen him engage in physical violence (RT 1683-84, 1714, 1850).  Shortly before Celentano died, Max Toscano noticed petitioner and Celentano frequently arguing after Celentano objected to petitioner letting his ex-wife visit.  RT 1832-35.  Toscano thought that Celentano had asked her to leave, which upset petitioner.  RT 1844.  Because they were arguing so much, three days before Celentano's death, Toscano suggested to petitioner that he find a different place to live, because Celentano was so set in his ways. Celentano told petitioner that if he did not like the way things were run, he could leave.  Petitioner replied, "One more time, that is all it is going to take."  Then petitioner said, "I have other places to go, I don't need to put up with this kind of stuff."  RT 3125-26.

Petitioner testified that he had known Celentano for 16 years and had lived with him at 43 Woodrow at various times over the years.  RT 2810-11. In August, 2001, petitioner moved back to that address and stayed in a cottage at the back of the residence.  RT 2814.  Celentano had never been violent with petitioner.  RT 2870-71.

Several weeks before Celentano's death, petitioner brought Cynthia Faddis, the mother of his daughter, to the house.  Celentano objected.  Petitioner indicated he could move out, since he wanted to be back with Faddis and his daughter anyway.  RT 2818-19.  When petitioner told Toscano that he was not

<div align="center">

-8-

</div>

1  going to take it any more, he meant that he would move out; after making that

2  remark, petitioner called Faddis to see if he could move back in with her.

3  RT 2984.

4       During his most recent stay at 43 Woodrow, petitioner saw Celentano

5  drinking a pint of vodka and some beers every day. RT 2823-24. Shortly before

6  his death, Celentano entered a 21-day methadone program, something he had tried

7  on a number of previous occasions. RT 2820-22. On Saturday, October 20, 2001,

8  the day before the incident, petitioner noticed how heavily Celentano was

9  drinking and told him to "slow down" so that he would not lose his methadone.

10 RT 2825. The next day, petitioner did not see Celentano drinking. RT 2826.

11      On the night of the incident, petitioner had gone to the kitchen in the

12 main house to use the microwave to make some soup. RT 2831. Celentano came

13 in and began to argue; petitioner could not remember about what. A minute into

14 the argument, Celentano "just completely freaked out," grabbed petitioner by

15 the neck and attacked him with a knife. RT 2834. 20 years earlier, petitioner

16 had been badly beaten and stabbed. RT 2835. He was terrified when Celentano

17 came at him and "freaked out" himself. RT 2837. In the ensuing struggle

18 petitioner stabbed Celentano to death. RT 2899, 2900-04.

19      When Celentano died, his blood alcohol level was 0.03. Dr. Gregory

20 Hayner, an expert on alcohol withdrawal and its treatment, did not believe that

21 this was a sufficient amount of alcohol to keep Celentano from going into

22 alcohol withdrawal, assuming he was drinking 8 ounces or more of vodka per day

23 near the time of his death. RT 2513-14, 2519-22.

24      Defense counsel sought to introduce evidence of an incident in 2000 when

25 Celentano was hospitalized and became violent and irrational from alcohol with-

26 drawal. (RT 2993-95, 3001, 3022; CT 353-359.) The trial court held a hearing

27 to evaluate the admissibility of the evidence. The witnesses were Dr. James

28 Chen, the treating physician, Olinda Menezes, a treating nurse, and Gregory

1  Hayner, chief pharmacist at the Haight-Ashbury Free Clinic Substance Abuse

2  Treatment Services.  They testified to the following:

3       On April 21, 2000, Celentano was admitted to Seton Hospital for alcohol-

4  related gastrointestinal bleeding and episodes of losing consciousness.  RT

5  2931, 2421.  Earlier that day, he had ingested heroin and two beers.  RT 2395.

6  He had been trying to limit his alcohol intake to about 8 ounces of vodka a

7  day.  He also had several beers a day.  RT 2514, 2518-19, 2524, 2999.

8       At 8:00 a.m. the following morning, Celentano was found walking the halls

9  naked.  He had torn out his IV's.  He was alert and combative and could not

10 be restrained.  RT 2429, 2439, 2465.  By "combative," Menezes meant that

11 Celentano would try to hit a nurse with his fist if she tried to provide care.

12 RT 2485.  He threatened the nurses and had to be supervised by a security guard.

13 He was a physical threat to hospital personnel and to himself.  RT 2467.

14 Restraints had to be ordered.  RT 2429, 2474-75, 2479.  He began receiving large

15 doses of several medications, including Ativan, Valium, Haldol, and morphine.

16 RT 2401-04, 2406-08, 2434.

17      By April 24, 2000, two days later, Celentano was still very combative.

18 Dr. Chen ordered an endoscopy, but it could not be performed because of

19 Celentano's aggressive behavior.  RT 2432, 2442.  "He became combative and began

20 flailing and thrashing and striking the nurse."  Defense Exhibit BB.

21      The trial court ruled the evidence inadmissible.  RT 3022.

22      The California Court of Appeal found that the trial court's exclusion

23 of the evidence of Celentano's prior violent behavior during alcohol withdrawal

24 violated petitioner's constitutional right to present a defense, but found the

25 error harmless.  See unpublished opinion in People v. Connolly, No. A105806

26 (hereinafter "Opinion") at pp. 25-27.

27 //

28 //

GROUND TWO

ADMISSION OF PETITIONER'S STATEMENT TO POLICE
OBTAINED DURING A CUSTODIAL INTERROGATION
IN VIOLATION OF HIS CONSTITUTIONAL RIGHT TO COUNSEL

Petitioner was interrogated off and on by police for more than five hours, beginning around 3:00 a.m.  RT 160-161.  For the first fifty minutes, petitioner was uncomfortably handcuffed.  RT 154, 159-160, 3130.  After fifty minutes, he asked for a drink of water.  RT 158-159, 3130.  During the first hour and fifty minutes, he sat with Officer Alger.  RT 141-142, 3130; CT 605-612.)  Alger did not interview petitioner or give him the Miranda advisement.  RT 2556.

When Detective Boffi arrived, he advised petitioner per Miranda v. Arizona, 451 U.S. 477 (1981), but failed to request a waiver.  CT 614.  Petitioner told Boffi he found Celentano on the floor and that he would have escaped if he had killed him.  CT 614, 616.  After several more minutes of questioning, petitioner said he would not say anything further without a lawyer.  CT 617.  The interview stopped.  Petitioner asked Boffi whether he would be provided a lawyer at that time.  Boffi replied, "No, we're not gonna wait just put your name here."  CT 618.

A short time later, Alger reentered and greeted petitioner by saying, "What up, brother?"  Petitioner asked if he could go to the bathroom.  Alger said he could after Alger finished with a series of booking questions.  CT 619.  When petitioner said he was a veteran, Alger said it would give petitioner a "cushion" at the jail because a lot of the jail guards were veterans.  He then said, "We try to do you a little favor, you know what I mean."  CT 622.  Petitioner asked several times whether Celentano was dead, what he was being charged with, and what the evidence showed.  CT 619, 624.  He asked if he could smoke a cigarette and again asked to go to the bathroom.  CT 624-625.  Alger left.  RT 2565.

About one-half hour later, petitioner, still needing to go to the bath-room, whistled. Alger returned. About 48 minutes had passed since petitioner first asked to go to the restroom. RT 3130-31; CT 619. The police kept petitioner for three hours in the interview room before taking him to the rest-room or allowing him a drink of water. RT 159, 168, 234, 2558-59, 3131.

As Alger and petitioner left the interview room for the restroom, Alger said, "I'll be honest with you." CT 626. Alger did not know what he had meant by this statement. RT 181, 2566. Once they left the interview room, their interactions were not recorded. Alger said that while they were in the rest-room petitioner changed his mind and asked if he could speak with Boffi again. CT 626; RT 132-133, 136, 2372-73. Alger denied asking petitioner any questions in the restroom. He testified that petitioner asked if he could speak with the detective again. RT 132-133. Alger did not record any of this in his police report, even though he admitted it was important. RT 170.

After petitioner was returned to the interview room, Alger told Boffi he had established a rapport with petitioner. They decided Alger would conduct the next stage of the interview. RT 177, 2373-74. When he reentered the inter-view room, Alger made a show of having obtained two cigarettes for petitioner, pretending he would be in trouble if petitioner were discovered smoking. CT 626-627.

Alger then gave petitioner the Miranda admonition, but he too failed to obtain a waiver. CT 628-629. Petitioner insisted that he did not kill Celentano and that he found the body. CT 628, 645, 655, 659, 662-663. The reason he initially told Alger it was self-defense was because he was "scared because of his record." If he had killed Celentano, he would have run. CT 637. He also suggested that someone else in the house killed Celentano. CT 661, 665. Petitioner again requested an attorney. CT 667. The request was completely ignored. See CT 667 et seq.

1    Towards the end of the interview, petitioner requested an attorney for
2  the third time: "Okay, so I'm gonna have to, I'm gonna talk to a lawyer and,
3  and just go to Redwood City."  The police again ignored the request.  People's
4  Exhibit 2; see CT 550.  The prosecutor conceded that the questioning should
5  have stopped at this point and agreed to redact everything that followed
6  petitioner's third request for an attorney.  RT 250.

7    Petitioner moved to suppress his statement to the police, claiming it
8  was involuntary and violated Miranda.  CT 269-280; RT 232-268.  The trial court
9  denied the motion on both grounds.  CT 481; RT 268.

10    California Court of Appeal found no error in denial of petitioner's
11  motion to suppress his statements to police.  Opinion at 9-19.

12

13                           GROUND THREE

14    EXCLUSION OF EVIDENCE REGARDING RELIABILITY OF PETITIONER'S STATEMENT
                   AND INSTRUCTIONS THAT THE STATEMENT WAS VOLUNTARY
15       VIOLATED THE RIGHT TO PRESENT A DEFENSE UNDER THE SIXTH AND
              FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
16

17    During his cross-examination of Officer Alger, defense counsel sought
18  to question him about his knowledge that petitioner had invoked his right to
19  counsel, and Boffi's and Alger's decision to re-Mirandize him.  RT 2560-61.
20  The trial court sustained the prosecutor's objections to this line of
21  questioning, and explained to the jury that the questions were improper because
22  they went to the "voluntariness" of petitioner's statement.  The court further
23  informed the jury that it had previously ruled that petitioner's statement was
24  "voluntary."  RT 2561-62.

25    Alger testified that he told petitioner a number of lies during the police
26  interview.  RT 2374, 2570-73.  He testified that he lied when he told petitioner
27  that he believed petitioner's original statement that he acted in self-defense.
28  RT 2374.  On cross-examination, defense counsel challenged Alger's credibility

1  and sought to show that Alger was telling the truth during the interview when

2  he told petitioner he believed him, and lying at trial when he testified he

3  did not. RT 2580, 2620-22. Counsel then attempted to cross-examine Alger about

4  the propriety of lying to a suspect. RT 2576, 2579, 2581. The trial court

5  sustained the prosecutor's objections to these questions on the ground that

6  they, too, went to the voluntariness of petitioner's statement. RT 2576, 2578,

7  2580. The court again instructed the jury that petitioner's statement was

8  "voluntary" and that Alger's lying was not improper because it did not render

9  the statement involuntary. RT 2576, 2578, 2580.

10      Defense counsel objected to the trial court's actions and sought to

11  explain that he was not relitigating the issue of voluntariness; instead, he

12  was trying to explore the credibility of the officeers and the circumstances

13  surrounding petitioner's statement. RT 2619-29. Counsel eventually moved for

14  a mistrial, which was denied. RT 2630, 2642; see also RT 2631-41.

15

16  <center>GROUND FOUR</center>

17  <center>INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL:
FAILURE TO PROPERLY MOVE TO STRIKE A PRIOR SERIOUS FELONY CONVICTION</center>

18  <center>IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION</center>

19      In an Amended Information filed in the San Mateo County Superior Court

20  on January 7, 2003, (CT 156-161) petitioner was charged, inter alia, with having

21  suffered a prior conviction of a violation of California Penal Code §245(A)

22  in the San Francisco County Superior Court on April 1, 1980, a serious felony

23  within the meaning of California's Three Strikes law (CT 158).

24      On October 17, 2003, defense counsel made a motion in limine to strike

25  the 1980 prior conviction because it did not qualify as a "strike" prior. CT

26  282-284. In support of that motion counsel submitted a copy of the Information

27  (CT 285-286) and a transcript of the change of plea proceeding wherein

28  petitioner entered his plea of guilty to a violation of Penal Code §245(A)

<center>-14-</center>

1   pursuant to a plea bargain (CT 287-294).

2        The transcript of the change of plea proceeding shows that, on April 1,

3   1980, petitioner's attorney Harriet Ross stated the following:

4            Mr. Connelly, I'm going to make a statement to the Court about
             your case.  It's very important that you listen to it carefully.
5            Your Honor, Mr. Connelly wants to enter a plea of guilty to the
             charge of assault with means likely to produce great bodily injury,
6            a violation of section 245A of the California Penal Code, a felony.
             CT 288.
7

8   Counsel went on to apprise the court that she had told petitioner he would be

9   giving up several constitutional rights by entering a plea of guilty to that

10  charge if the court accepted the plea.  CT 288-289.  After describing for the

11  court the advisements she had given petitioner, counsel told the court, "The

12  plea is offered as a result of discussions with the District Attorney and the

13  Court...."  CT 289.  When counsel completed her statement to the court, the

14  following occurred:

15           THE COURT: Thank you.
             Now, have you also advised Mr. Connelly, in addition to
16           those matters set forth, that he has entered a plea of not guilty
             by reason of insanity, ... and have you advised him that in
17           changing his plea he would be withdrawing his plea of not guilty
             by reason of insanity and that the Court --
18           MS. ROSS: It slipped my mind, your Honor.  I'm sorry.
             [¶]
19           THE COURT: And, Mr. Connelly, I want you to understand if you
             withdraw that plea as well, that means that the issue of that
20           plea of not guilty by reason of insanity would be not before the
             Court any longer, and that upon changing of the plea, then you
21           are subjecting yourself to conviction on the underlying offense
             as set forth by Miss Ross, and do you understand that?
22           CT 291.

23  Petitioner then withdrew his pleas of not guilty by reason of insanity and not

24  guilty, after which the court stated, "You have heard the statements made to

25  the Court by your counsel.  Are they true in all respects?"  After petitioner

26  answered, "Yes," the court took petitioner's waiver of constitutional rights,

27  then asked petitioner, "What is your plea to violating Section 245A of the Penal

28  Code, a felony, as set forth in Count 3 of the information?"  Petitioner

-15-

1   responded, "Guilty."  CT 291-293.

2          Based on the court's discussion of the case with both counsel, the court

3   found that there was a factual basis for the plea and thereby accepted it.

4   CT 293.  Count 3, as set forth in the Information, charged petitioner with

5   "assault ... with a deadly weapon and instrument, to wit: a GUN" and contained

6   an allegation of personal use of a firearm.  CT 286.  The firearm use

7   allegation "inherent to Count 3" was stricken, and all other charges were dis-

8   missed on the prosecutor's motion.  CT 294.  As one of the terms of the plea

9   agreement, petitioner was required to seek and undergo psychiatric treatment

10  if given probation as a result of the conviction.  CT 290.

11         At the hearing on the motion to strike, defense counsel argued the

12  following points: (1) because the intent of the parties to the 1980 proceeding

13  was for petitioner to plead guilty to assault without a deadly weapon, which

14  is not a "strike," the record of conviction of assault with a deadly weapon

15  was a clerical error, subject to correction to reflect the plea bargain (RT

16  334-335); and (2) the record of the prior conviction was too ambiguous to

17  amount to sufficient evidence of a "strike" prior because not all §245(a)

18  convictions were "strikes" (RT 344-345).

19         The trial court analyzed the authorities counsel relied on to support

20  his second argument, and found them inapplicable to the circumstances of

21  petitioner's case.  RT 348-353.  In response to counsel's argument regarding

22  the intent of petitioner and Ms. Ross at the time of the prior plea, the court

23  stated, "It is not the intent of either of them, it's the plea that was entered

24  to the charge." RT 355.  The court wwent on to say that if petitioner wanted

25  to challenge the prior based on what petitioner thought at the time he entered

26  the plea, petitioner would have to attack the conviction in the San Francisco

27  court.  RT 356, 358.  The court denied the motion, stating,

28              What I am saying is as a matter of law it is a strike because

-16-

1               what he pled to was a 245(a) deadly weapon, a firearm, and
the rest of it is just -- the rest of it is for the [San

2               Francisco] court to deal with.  He needs to move to withdraw
his plea and enter a new and different plea.

3               RT 361.

4       On December 10, 2003, the jury found petitioner guilty of the charged

5  crime.  CT 739.  On January 14, 2004, defense counsel filed a written "Trial

6  Memorandum Re: Prior Conviction."  CT 837-840.  In that memorandum, counsel

7  represented to the court that he had previously made a "Motion to Correct the

8  Record" in the San Francisco County Superior Court, and that on September 13,

9  2002, that court had denied the motion.  CT 839.  Counsel went on to say that

10  the judge who had denied the motion found that Ms. Ross should have made sure

11  the Information was amended at the time petitioner entered his plea in 1980.

12  CT 839-840.  Based on that finding, counsel sought to challenge the prior

13  conviction on the ground of ineffective assistance of counsel.  CT 840.

14       The trial on the 1980 prior was held on January 16, 2004.  CT 866-867.

15  Counsel argued to the trial court that Ms. Ross was ineffective in the 1980

16  proceedings.  RT 3368-70.  The trial court rejected counsel's arguments,

17  stating, "I don't feel that there is sufficient proof to make me doubt that

18  the conviction was of a 245(a) deadly weapon firearm."  RT 3376.  Accordingly,

19  the court found that the 1980 conviction was a "strike," and added a term of

20  20 years to life to petitioner's prison sentence as a result of that finding.

21  RT 3376-77, 3387-88.

22       In 1980, Ms. Ross was familiar with section 245 of the California Penal

23  Code, knew that a person could violate that section by committing either assault

24  upon another person with a deadly weapon or by any means of force likely to

25  produce great bodily injury, and knew the difference between the two allegations

26  contained in the same section.  Exhibit A ¶3.  When Ms. Ross appeared in court

27  with petitioner on April 1, 1980, she would not have told the court that

28  petitioner's plea was to assault with means likely to produce great bodily

1  injury if that had not been the agreement with the District Attorney's office.

2  Id. ¶4.

3      Petitioner's 1980 plea was based on an agreement that he would plead

4  guilty to assault with force likely to produce great bodily injury, not assault

5  with a deadly weapon.  Ex. B ¶2.  Petitioner was not informed before entering

6  his plea of guilty to Count 3 of the Information that this count charged him

7  with assault with a deadly weapon and had not been amended to reflect the plea

8  agreement.  Ibid.  Petitioner assumed that changes in any court documents

9  necessary to reflect the plea agreement had been made by the court and/or

10  counsel, and pled guilty to Count 3 believing that it charged him with assault

11  with force likely to produce great bodily injury.  Ibid.

12

13                          GROUND FIVE

14  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL: FAILURE TO RAISE THE ISSUE
            OF IMPROPER DENIAL OF MOTION TO STRIKE THE PRIOR CONVICTION
15    IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

16      Petitioner incorporates by reference herein the facts stated in support

17  of Ground Four of this Petition.

18      Appointed counsel did not raise on appeal any issues related to the trial

19  court's denial of petitioner's motions to strike the 1980 prior conviction.

20

21                          GROUND SIX

22        INEFFECTIVE ASSISTANCE OF COUNSEL: FAILURE TO OBJECT
        TO INTRODUCTION OF INADMISSIBLE EVIDENCE OF VICTIM'S CHARACTER
23          IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS
                  TO THE UNITED STATES CONSTITUTION

24

25      Petitioner was charged with murder after stabbing George Celentano to

26  death with a knife.  Petitioner's defense was that the victim, an alcoholic

27  who became delusional and aggressive when withdrawing from alcohol, was with-

28  drawing from alcohol at the time of the incident.  RT 1449-1450.  As a result

                                -18-

1   of his alcohol withdrawal, the victim became enraged during a verbal argument
2   with petitioner and attacked petitioner with a knife.  RT 1453.  During the
3   ensuing struggle, petitioner stabbed the victim in self-defense.  RT 1453-54.

4         In support of petitioner's defense, counsel sought to introduce evidence
5   that showed the victim had become violent and aggressive on a previous occasion
6   while suffering from alcohol withdrawal.  RT 382; CT 353-359; see also facts
7   in support of Ground One ante.  The trial court deferred any ruling on
8   admissibility of evidence of the victim's prior violent behavior until after
9   petitioner testified.  RT 448.

10        On direct examination of Joseph Chavez, the prosecutor elicited evidence
11  that showed Chavez had known the victim for over 20 years (RT 1669), and in
12  that time the victim had never become violent (RT 1683).

13        On direct examination of Alfred Sanchez, the prosecutor elicited evidence
14  that Sanchez had known the victim for 25 years and had never seen the victim
15  become violent towards anyone during that entire time.  RT 1713-14.

16        On direct examination of Max Toscano, the prosecutor elicited evidence
17  that Toscano had known the victim for approximately four years (RT 1817-18),
18  and had never seen him become physically violent towards anyone during that
19  time (RT 1850).

20        None of those witnesses were present at the residence when Celentano was
21  killed.  Defense counsel did not object to any of the testimony regarding the
22  victim's non-violent character.

23        Petitioner testified that the victim had an alcohol problem in addition
24  to being a heroin addict, and that the victim had entered a methadone program
25  shortly before the incident.  RT 2820.  A rule for participation in a methadone
26  program was that the participant not drink alcohol, and petitioner did not see
27  the victim drink any alcohol on the day of the incident.  RT 2822, 2825-26.
28  On the night of the incident, petitioner and the victim had an argument.  RT

1    2833. During the argument, Celentano "just freaked out" and attacked petitioner
2    with a knife. RT 2834-35. During the struggle, petitioner stabbed him out
3    of fear for his own life. RT 2837-38.

4        After petitioner's testimony, defense counsel renewed his motion for
5    admission of evidence of the victim's prior violent acts during alcohol with-
6    drawal. RT 2993. The trial court denied the motion and excluded the evidence.
7    RT 3021-23. On petitioner's direct appeal, the California Court of Appeal found
8    that the trial court's exclusion of the evidence was error, noting that
9    petitioner's "sole theory to support an acquittal was that he acted in self-
10   defense in response to the victim's irrational behavior [and] [no] evidence
11   was presented to corroborate [his] version of the incident." Opinion at 25.
12   In its rendition of the fact of petitioner's case the Court of Appeal relied
13   on the testimony of Chavez and Sanchez regarding the victim's non-violent
14   character (id. at 2-3), and relied on the testimony of all three of the
15   prosecution witnesses noted above in finding the erroneous exclusion of defense
16   evidence harmless (id. at 26).
17   //
18   //
19
20
21
22
23
24
25
26
27
28

# EXHIBIT   A

1  **JAMES ROBERT COURSHON**
   **Attorney at Law, State Bar No. 100951**
2  **1700 S. El Camino Real, Suite 420**
   **San Mateo, CA 94402**
3  **(650) 573-5701**
   **(650) 578-8812 (Fax)**
4

5  Attorney for Defendant, MICHAEL JOSEPH CONNELLY

02 JUL 12 PM 2:36

DISTRICT ATTORNEY'S OFFICE
SAN FRANCISCO, CALIFORNIA

BY_____

**ENDORSED**
**F I L E D**
San Francisco County Superior Court

**JUL 1 2 2002**

**GORDON PARK-LI, Clerk**
BY: ___ GIA P. ESPINOCILLA
                    Deputy Clerk

6

7

8                    SUPERIOR COURT OF CALIFORNIA

9                    COUNTY OF SAN FRANCISCO

10  MICHAEL J. CONNELLY,
                    Petitioner,                    Case No. 101037  Writ #4401

11                                                 **DECLARATION OF HARRIET ROSS**
                                                   **RE: PETITION FOR WRIT OF HABEAS**
12                                                 **CORPUS**

13        v.

14  SUPERIOR COURT OF CALIFORNIA,                  DATE:        JULY 24, 2002
    COUNTY OF SAN FRANCISCO;                       TIME:        2:00 P.M.
15                    Respondent.                  DEPT:        22

16        I, Harriet Ross, declare that:

17        1.    I am an attorney at law authorized to practice law in the State of California and I was the

18  attorney for petitioner,  in the case entitled "The People of the State of California  v. Michael J.

19  Connelly," Case #101037, which was pending in the Superior Court of California, County of San

20  Francisco.

21        2.    I have reviewed a copy of the information  and the Reporter's Transcript of the

22  proceedings dated April 1, 1980.

23        3.    As of April 1, 1980, I was familiar with §245 of the Penal Code and I knew that a

24  person could violate that section by committing either an assault upon another person with a deadly

25  weapon or by any means of force likely to produce great bodily injury.  I knew the difference between

26  the two allegations contained in the same section.

27

28

                                        1

4.      When I appeared in court with the defendant on April 1, 1980, and the case was called by the court, I indicated to the court that "The defendant at this time would make a motion to withdraw his plea to Count III of the information with the gun allegation deleted." See: Exhibit "B", Page 1, Lns. 7-11, which is attached to petitioner's Petition for Writ of Habeas Corpus. I then indicated to the court that Mr. Connelly wanted to enter a plea of guilty to the charge of assault with means likely to produce great bodily injury, in violation of § 245(a) of the California Penal Code, a felony. As part of the advise of rights given by myself to the defendant in open court, I so informed the defendant. I knew the difference between an assault with a deadly weapon and an assault with means likely to reduce great bodily injury. I would not have told the court that the plea was an assault with means likely to produce great bodily injury if that had not been the agreement with the District Attorney's Office. See: Exhibit "B" Page 1, Lns. 24-17, which is attached to petitioner's Petition for Writ of Habeas Corpus.

5.      When the court took Mr. Connelly's plea, the court merely stated, "Then, Michael Connelly, what is your plea to violating §245 of the Penal Code, a felony, as set forth in Count III of the information?" See: Reporter's Transcript, Page 6, Lns. 14-16, attached as Exhibit "B" to petitioner's Petition for Writ of Habeas Corpus. In my opinion, if the District Attorney had wanted the defendant to plead guilty to an assault with a deadly weapon, the court would have then been specific in taking the defendant's plea and asking the defendant if he plead guilty to violating §245(a) of the Penal Code, which is alleged as assault with a deadly weapon. I believed that the court did not do that since it was previously stated by myself that the defendant was going to plead to a violation of that section as an assault with means likely to produce great bodily injury.

6.      I believe that the error in the record was an oversight by the court and that counsel and/or the court must have been distracted and it was merely an oversight that Count III was not officially amended on the face of the information.

I declare under penalty of perjury that the foregoing is true except as to those matters I allege on information and belief, and as to those matters I believe them to be true.

Executed on July _6_, 2002, at San Francisco, California.

_____/s/_____

HARRIET ROSS

2

# EXHIBIT   B

DECLARATION OF MICHAEL JOSEPH CONNOLLY

1.  I am the petitioner in the Petition for Writ of Habeas Corpus submitted herewith.

2.  My 1980 plea was based on an agreement that I would plead guilty to assault with force likely to produce great bodily injury, not assault with a deadly or dangerous weapon.  I was not informed before entering my plea of guilty to Count Three of the Information in that case that this count charged me with assault with a deadly weapon and had not been amended to reflect the plea agreement. I assumed that changes in any court documents necessary to reflect the plea agreement had been made by the court, my attorney or the prosecutor, and pled guilty to Count Three believing that it charged me with assault with force likely to produce great bodily injury.

3.  Although between 1980 and 2001 I was convicted and sentenced to prison several times, at no time until the current conviction had the 1980 prior been used as a serious prior conviction for the purpose of sentence enhancement.

4.  In the course of investigation and preparation of the claims raised in this Petition, I wrote attorney Harriet Ross who represented me in the 1980 proceedings and asked her whether she would execute a declaration substantially similar to that submitted herewith as Exhibit A.  As I could not locate Ms. Ross in the current lawyers' directory in the prison library, I wrote her to the address indicated on the proof of service of her 2002 declaration.  To date, I have not received any response to that letter.  Exhibit A contains a true and correct copy of the Declaration of Harriet Ross Re: Petition for Writ of Habeas Corpus, which I received from my trial counsel's office before my trial.  It is the only copy of that Declaration I could locate.

I declare under penalty of perjury that the foregoing is true and correct. Executed on _May 18, 2008_ , at Vacaville, California.

_Michael Joseph Connolly_
Michael Joseph Connolly

1   Michael J. Connolly
    P-52999
2   California State Prison - Solano
    P.O. Box 4000
3   Vacaville, CA 95696-4000

4        Petitioner pro se

5

6

7

8                   IN THE UNITED STATES DISTRICT COURT

9               FOR THE NORTHERN DISTRICT OF CALIFORNIA

10  MICHAEL JOSEPH CONNOLLY,

11              Petitioner,              No. _____

12        v.

13  D. K, SISTO, Warden,

14              Respondent.

15

16

17              MEMORANDUM OF POINTS AND AUTHORITIES

18        IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

19

20

21

22

23

24

25

26

27

28

1

<div align="center">TABLE OF CONTENTS</div>

GROUND ONE:     EXCLUSION OF EVIDENCE OF THE VICTIM'S AGGRESSIVE          1
                CONDUCT IN VIOLATION OF THE RIGHT TO PRESENT A
                DEFENSE UNDER THE SIXTH AND FOURTEENTH AMENDMENTS
                TO THE UNITED STATES CONSTITUTION

GROUND TWO:     ADMISSION OF PETITIONER'S STATEMENT TO POLICE            4
                OBTAINED DURING A CUSTODIAL INTERROGATION IN
                VIOLATION OF HIS CONSTITUTIONAL RIGHT TO COUNSEL

GROUND THREE:   EXCLUSION OF EVIDENCE REGARDING RELIABILITY OF           7
                PETITIONER'S STATEMENT AND INSTRUCTIONS THAT THE
                STATEMENT WAS VOLUNTARY VIOLATED THE RIGHT TO PRESENT
                A DEFENSE UNDER THE SIXTH AND FOURTEENTH AMENDMENTS
                TO THE UNITED STATES CONSTITUTION

GROUND FOUR:    INEFFECTIVE ASSISTANCE OF COUNSEL: FAILURE TO MOVE       10
                TO STRIKE A PRIOR SERIOUS FELONY CONVICTION IN
                VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED
                STATES CONSTITUTION

                (a) THE PLEA TO ASSAULT WITH A DEADLY WEAPON WAS NOT     13
                    VOLUNTARY AND INTELLIGENT

                (b) THE 1980 PLEA AGREEMENT WAS VIOLATED                 14

GROUND FIVE:    INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL: FAILURE     16
                TO RAISE THE ISSUE OF IMPROPER DENIAL OF MOTION TO
                STRIKE THE PRIOR CONVICTION IN VIOLATION OF THE
                FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

GROUND SIX:     INEFFECTIVE ASSISTANCE OF COUNSEL: FAILURE TO OBJECT     18
                TO INTRODUCTION OF INADMISSIBLE EVIDENCE OF VICTIM'S
                CHARACTER IN VIOLATION OF THE SIXTH AND FOURTEENTH
                AMENDMENTS TO THE UNITED STATES CONSTITUTION

CONCLUSION                                                              22

TABLE OF AUTHORITIES

CASES

Bousley v. United States, 523 U.S. 614 (1998)    13

Bradshaw v. Stumpf, 545 U.S. __, 125 S.Ct. 2398 (2005)    13

Brady v. United States, 397 U.S. 742 (1970)    13

Brecht v. Abrahamson, 507 U.S. 619 (1993)    3, 6, 9

Brown v. Poole, 337 F.3d 1155 (9th Cir. 2003)    15

Buckley v. Terhune, 441 F.3d 688 (9th Cir. 2006)    15

Chambers v. Mississippi, 410 U.S. 284 (1973)    1

Chapman v. California, 386 U.S. 18 (1967)    1, 2, 3

Crane v. Kentucky, 476 U.S. 683 (1986)    7, 8, 9

Custis v. United States, 511 U.S. 485 (1994)    12

Davis v. Woodford, No. 05-55164, 2006 DJDAR 5033 (9th Cir. 2006)    16

Edwards v. Arizona, 451 U.S. 477 (1981)    4, 5

Evitts v. Lucey, 469 U.S. 387 (1985)    16

Garcia v. Superior Court, 14 Cal.4th 953 (1997)    12

Henderson v. Morgan, 426 U.S. 637 (1976)    13, 14

INS v. St. Cyr, 533 U.S. 289 (2001)    15

Jackson v. Virginia, 443 U.S. 307 (1979)    2

Miller v. Keeney, 882 F.2d 1428 (9th Cir. 1989)    17

Miranda v. Arizona, 384 U.S. 436 (1966)    4, 5, 8

Mitchell v. Esparza, 540 U.S. 12 (2003)    2

Moran v. Burbin, 475 U.S. 412 (1986)    9

O'Neal v. McAninch, 513 U.S. 432 (1995)    3

Oregon v. Bradshaw, 462 U.S. 1039 (1983)    4

Parle v. Runnels, 387 F.3d 1030 (9th Cir. 2004)    21

Payton v. Woodford, 346 F.3d 1204 (9th Cir. 2003)    3

People v. Allen, 21 Cal.4th 424 (1999)    10, 13, 18

1  People v. Dolliver, 181 Cal.App.3d 49 (1986)                                    13

2  People v. Rodriguez, 17 Cal.4th 253 (1998)                                      11

3  People v. Sumstine, 36 Cal.3d 909 (1984)                                    13, 18

4  People v. Yeoman, 31 Cal.4th 93 (2003)                                          18

5  Ricketts v. Adamson, 483 U.S. 1 (1987)                                          15

6  Santobello v. New York, 404 U.S. 257 (1971)                                     15

7  Strickland v. Washington, 466 U.S. 668 (1984)                                10-22

8  Sullivan v. Louisiana, 508 U.S. 275 (1993)                                       2

9  United States v. Keller, 902 F.2d 1391 (9th Cir. 1990)                          15

10  United States v. Monreal, 301 F.3d 1127 (9th Cir. 2002)                        15

11  Washington v. Texas, 388 U.S. 14 (1967)                                         1

12  Williams v. Superior Court, 92 Cal.App.4th 612 (2001)                          16

13

14  CONSTITUTION AND STATUTES

15  U.S. Constitution, Amendment V                                               4, 8

16  U.S. Constitution, Amendment VI                            1, 7, 8, 9, 10, 18

17  U.S. Constitution, Amendment XIV                        1, 7, 8, 13, 16, 18

18  28 U.S.C. §2254(d)                                          2, 3, 6, 10, 18

19  California Civil Code §1636                                                     15

20  California Evidence Code §1101                                              19, 20

21  California Evidence Code §1103                                              19, 20

22  California Penal Code §245                                        11, 12, 15, 16

23  California Penal Code §667                                                  11, 16

24  California Penal Code §1192.7                                                   11

25

26

27

28

1   Michael J. Connolly
    P-52999
2   CSP-Solano
    P.O. Box 4000
3   Vacaville, CA 95696-4000

4        Petitioner pro se

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10   MICHAEL JOSEPH CONNOLLY,

11            Petitioner,          No. _____

12   v.                            MEMORANDUM OF POINTS AND AUTHORITIES
                                   IN SUPPORT OF PETITION FOR A WRIT OF
13                                 HABEAS CORPUS

14            Respondent.

15

16                     GROUND ONE

17        EXCLUSION OF EVIDENCE OF THE VICTIM'S AGGRESSIVE CONDUCT
          IN VIOLATION OF THE RIGHT TO PRESENT A DEFENSE UNDER THE SIXTH
18        AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

19        The Supreme Court has made clear that the erroneous exclusion of critical,

20   corroborative defense evidence violates both the Fourteenth Amendment due

21   process right to a fair trial and the Sixth Amendment right to present a

22   defense.  Chambers v. Mississippi, 410 U.S. 284, 294 (1973): Washington v.

23   Texas, 388 U.S. 14, 18-19 (1967).

24        As shown by the supporting facts, the state court found that the trial

25   court's exclusion of the evidence of Celetano's prior violent behavior was

26   constitutional error, but harmless under Chapman v. California, 386 U.S. 18,

27   23 (1967).  Accordingly, the first inquiry is whether or not the state court's

28   ruling was an unreasonable application of the Chapman harmless error test.

                              -1-

1    Mitchell v. Esparza, 540 U.S. 12, 18 (2003); 28 U.S.C. §2254(d).  Below,

2    petitioner will show that it was.

3        The harmless error test of Chapman, supra, requires that the People prove

4    beyond a reasonable doubt that the error did not contribute to the verdict in

5    the case.  Id. at 24.  In conducting the harmless error analysis the state

6    court engaged in what can only be characterized as an evaluation similar to

7    that contemplated by a challenge to the sufficiency of the evidence under

8    Jackson v. Virginia, 443 U.S. 307, 319 (1979): the court took all inferences

9    from the evidence in favor of the prosecution, ignoring defense evidence that

10   allowed for an alternative interpretation that favored petitioner's version

11   of events, then ruled the evidence overwhelming.  Opinion at 25-27.

12       In Sullivan v. Louisiana, 508 U.S. 275, 279 (1993), the Court ruled that

13   the inquiry under Chapman

14           is not whether, in a trial that occurred without the error,
             a guilty verdict would surely have been rendered,
15           but whether the guilty verdict actually rendered in this trial
             was surely unattributable to the error.  That must be so,
16           because to hypothesize a guilty verdict that was never in fact
             rendered--no matter how inescapable the findings to support
17           that verdict might be--would violate the jury-trial guarantee.

18   The right to a jury trial, the Court concluded, "requires more than appellate

19   speculation about a hypothetical jury's action, or else directed verdicts for

20   the State would be sustainable on appeal."  Id. at 280.  In sum, the test is

21   not whether a hypothetical jury, no matter how reasonable or rational, would

22   render the same verdict in the absence of the error, but whether there is any

23   reasonable possibility that the error might have contributed to the conviction

24   in petitioner's case.

25       As the state court rightly noted, petitioner's "sole theory to support

26   an acquittal was that he acted in self-defense in response to the victim's

27   irrational behavior [and] [n]o evidence was presented to corroborate [his]

28   version of the incident."  Opinion at 25.  That observation alone defeats the

-2-

1    conclusion that there is no reasonable probability that the erroneous exclusion

2    of the only evidence that would have corroborated petitioner's testimony could

3    not have contributed to the verdict.  Accordingly, the state court's

4    application of Chapman was objectively unreasonable, and §2254(d) does not

5    preclude relief.

6        The question before this Court is whether the error in exclusion of

7    crucial corroborative defense evidence had a "substantial and injurious effect

8    or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507

9    U.S. 619, 637 (1993).  The State bears the burden of proving the error harmless

10   under the Brecht harmless-error test.  Payton v. Woodford, 346 F.3d 1204, 1216-

11   17 (9th Cir. 2003)(en banc), citing O'Neal v. McAninch, 513 U.S. 432, 437-445

12   (1995).

13       Petitioner claimed self-defense.  He testified that Celentano suddenly

14   and inexplicably attacked him in the kitchen with a knife.  Based on what the

15   jury knew of Celentano, this was uncharacteristic conduct: Celentano was a 67-

16   year-old heroin addict who was known to be verbally abusive, but not violent

17   or aggressive.  Petitioner's self-defense claim, therefore, depended on the

18   jury understanding that Celentano was capable of such violence and aggression,

19   i.e., that he had a trait for it when withdrawing from alcohol.  Without such

20   knowledge, the jury would have found it difficult, if not impossible, to believe

21   that Celentano attacked petitioner without provocation.  The error in exclusion

22   of the evidence eviscerated petitioner's defense.

23       In addition, contrary to the state court's rendition of the evidence,

24   the prosecution's case was not overwhelming.  The prosecutor's own experts con-

25   ceded that the physical evidence was consistent with petitioner's description

26   of Celentano's attack and his claim of self-defense.

27       Petitioner respectfully submits that, given the facts of his case, the

28   error complained of herein cannot be deemed harmless.  Accordingly, petitioner

-3-

1  is entitled to habeas relief.

2

3                              GROUND TWO

4              ADMISSION OF PETITIONER'S STATEMENT TO POLICE
                  OBTAINED DURING A CUSTODIAL INTERROGATION
5             IN VIOLATION OF HIS CONSTITUTIONAL RIGHT TO COUNSEL

6         In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that

7  any statement obtained by an officer from a suspect during custodial

8  interrogation may be admitted in evidence only if the officer advises the

9  suspect of both his right to remain silent and the right to have counsel present

10 at questioning, and the suspect waives those rights and agrees to speak to

11 the officer.  The Court also held that if the suspect indicates that he does

12 not wish to speak to the officer or wants to have counsel present at

13 questioning, the officer must end the interrogation.  Id. at 444-445.

14        Once having invoked these rights, the accused "is not subject to further

15 interrogation by the authorities until counsel has been made available to him,

16 unless the accused himself initiates further communication, exchanges, or

17 conversations with the police."  Edwards v. Arizona, 451 U.S. 477, 484-485

18 (1981).  The initiation of further dialogue by the accused, however, does not

19 in itself justify re-interrogation.  Oregon v. Bradshaw, 462 U.S. 1039, 1044

20 (1983).  "[E]ven if a conversation taking place after the accused has expressed

21 his desire to deal with the police only through counsel, is initiated by the

22 accused, where re-interrogation follows, the burden remains upon the

23 prosecution to show that subsequent events indicated a waiver of the Fifth

24 Amendment right to have counsel present during the interrogation."  Ibid.

25        Under these principles, the trial court erred.  Although it does not

26 appear to have made an express finding, the trial court implicitly found

27 petitioner reinitiated further contact with the police when he and Alger went

28 to the restroom.  See RT 253-268.  In doing so, the trial court ignored several

                                    -4-

1  important facts that, when taken together, demonstrate a violation of Edwards,

2  supra.

3       First, there were the circumstances surrounding the purported re-

4  initiation.  Petitioner sat, uncomfortably handcuffed, for almost two hours

5  before he was advised per Miranda.  Within seven minutes of the advisement,

6  he requested an attorney.  Around the same time, he asked to go to the bath-

7  room.  The police made him wait another 50 minutes.  RT 3131.  All told, the

8  police kept petitioner for three hours in the interview room before taking

9  him to the restroom or allowing him a drink of water.  RT 158-159, 168, 234,

10  2558-59, 3130-31.

11       As petitioner and Alger left for the bathroom, Alger made a suspicious

12  remark--"I'll be honest with you"--that he was unable to explain.  Then, once

13  in the bathroom--the only time petitioner and the police were not monitored

14  by a video recorder--petitioner supposedly voluntarily waived his previous

15  request for counsel and asked to speak with Detective Boffi again.  Incredibly,

16  Alger never recorded this incident in his police report, even though he

17  acknowledged its importance.

18       After petitioner's first request for an attorney, the police stopped

19  the interrogation, but they did not stop questioning him.  As soon as petitioner

20  requested counsel, Alger began asking him a series of "booking" questions which,

21  while technically legal, appeared aimed at undermining petitioner's request

22  for counsel.  Petitioner was a "talker," and it appears from the record that

23  the police used the excuse of booking questions to get him talking again.

24  They also used it as another opportunity to "soften up" petitioner.  When Alger

25  learned that petitioner was a veteran, he said it would help him in the jail

26  and added that "We try to do you a little favor."  CT 622.  Alger also pretended

27  to go to great lengths to get petitioner a cigarette, claiming he risked getting

28  in trouble himself.

-5-

1    At the same time, the police used the opposite tactics of discomfort

2 and duress.  Petitioner was not provided water or a restroom for the first

3 three hours of the interview.  Once he asked for water, he was made to wait

4 another two hours.  And once he asked to go to the bathroom, he was made to

5 wait another 50 minutes.  He was kept uncomfortably handcuffed in the interview

6 room in the middle of the night for more than five hours.

7    Finally, the state court  failed to consider the fact that the police

8 ignored petitioner's second and third requests for an attorney.

9    Taken together, these facts show a course of police misconduct that the

10 trial court failed to consider in denying the motion.  In light of those facts,

11 Alger's testimony that petitioner reinitiated the police interview in the rest-

12 room becomes inherently incredible, and appears to have been part of a

13 concerted effort by the police to continue the interview despite petitioner's

14 repeated requests for counsel.

15    The California Court of Appeal repeated the trial court's errors.  See

16 Opinion at 9-19.  In addition, it failed to consider the fact that petitioner's

17 second request for counsel was ignored by the police, even though this omission

18 was brought to its attention.  The Court of Appeal also erred in discounting

19 the discomfort and duress that petitioner was subjected to; its finding that

20 petitioner had not been denied access to water or restroom "for any significant

21 period of time" is contrary to the clear and convincing evidence in the record.

22 See RT 158-159, 168, 234, 2558-59, 3130-31; cf. Opinion at 19.  Accordingly,

23 the opinion of the Court of Appeal is entitled to no deference under 28 U.S.C.

24 §2254(d).

25    The erroneous denial of petitioner's motion to suppress the statement

26 to police is subject to harmless error analysis under the standard of Brecht

27 v. Abrahamson, 507 U.S. at 637.  Petitioner's interview with the police hurt

28 his credibility with the jury.  Before the interview and later at trial,

1  petitioner was consistent in his claim of self-defense.  He told the dispatcher

2  and Alger that he killed Celentano in self-defense.  He said the same thing

3  at the trial.  During the police interview, however, he repeatedly lied,

4  claiming he found Celentano already dead.  Worse still, he openly tried to

5  calculate what the best defense would be given the law and the evidence against

6  him.  He looked like someone with much to hide rather than an innocent man

7  determined to tell the truth.

8       Since there were no witnesses, petitioner's defense hinged on his

9  credibility.  The police interview undermined it.  Since he lied to the police,

10  the jury would have been hard pressed to credit his account at trial.  Given

11  these circumstances, respondent cannot prove that the erroneous admission of

12  petitioner's statement did not have a substantial and injurious effect or

13  influence on the verdict, and petitioner is entitled to habeas relief.

14

15                          GROUND THREE

16      EXCLUSION OF EVIDENCE REGARDING RELIABILITY OF PETITIONER'S STATEMENT
                    AND INSTRUCTIONS THAT THE STATEMENT WAS VOLUNTARY
17           VIOLATED THE RIGHT TO PRESENT A DEFENSE UNDER THE SIXTH AND
                  FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
18

19      In Crane v. Kentucky, 476 U.S. 683 (1986), the Supreme Court held that

20  a finding that a statement is voluntary does not preclude an attack on its

21  reliability at trial.  Id. at 687.  In so holding, the Court made clear that

22  though voluntary, a confession nonetheless could be false, unreliable, in-

23  sufficiently corroborated, or "unworthy of belief."  Id. at 689-691.  The Court

24  thus distinguished between coercion that violated the Constitution and rendered

25  a statement involuntary and inadmissible, and lesser forms of pressure that,

26  though not unconstitutional, could nonetheless result in an untrustworthy con-

27  fession.  Id. at 689.  The Court held that by excluding defense testimony

28  "bearing on the circumstances under which the confession was obtained," the

                              -7-

1  trial court violated the defendant's Fifth, Sixth, and Fourteenth Amendment

2  rights to a meaningful defense.  Id. at 685-686, 690-691.)

3      The same error occurred in petitioner's trial when the trial court barred

4  petitioner from inquiring into the circumstances surrounding his several

5  Miranda admonishments.  More importantly, it barred him from questioning Alger

6  about his claim that he lied to petitioner during the interview, and the

7  propriety of such lying, although this is precisely the type of subject matter

8  that Crane held relevant and admissible.

9      The trial court also erred by instructing the jury that petitioner's

10  statement was voluntary.  The distinction that the Supreme Court drew in Crane

11  between the voluntariness of a suspect's statement or confession and its

12  reliability is a subtle one.  It recognizes that a suspect's statement may

13  be voluntary at the same time it is unreliable, even false, because of any

14  number of factors, including coercive police practices that fall short of those

15  that are constitutionally condemned.  The distinction is not altogether

16  intuitive, because one does not expect a voluntary confession to be unworthy

17  of belief.  Put differently, if a confession is rendered unreliable because

18  of police pressure, one would expect it to be involuntary.  Crane, however,

19  clearly said that this is not necessarily the case.  476 U.S. at 689.

20      Given this subtle distinction, the trial court erred when it instructed

21  the jury that petitioner's statement was "voluntary," because it failed to

22  explain that the jury still had to determine whether the statement was un-

23  reliable because of the physical and psychological circumstances surrounding

24  it.  The jury would have assumed that "voluntary" meant "reliable," and that

25  the various factors that petitioner tried to highlight--his discomfort, his need

26  to go to the bathroom, the lack of water and sleep, and the officers' deceptive

27  practices and softening up--were irrelevant to anything he said.

28      The trial court erred again when it instructed the jury that it was not

-8-

1   improper for Alger to lie.  The statement endorsed Alger's testimony that he

2   was lying, and deprived petitioner of his ability to challenge that contention.

3   Moreover, it was incorrect.  Alger's claimed deceptiveness may not have rendered

4   petitioner's statement involuntary, but that did not make it proper or bar

5   petitioner from challenging its credibility.  Deceptive police practices can

6   lead to a finding of involuntariness, and, of course, unreliability.  Moran

7   v. Burbin, 475 U.S. 412, 421 (1986)("The relinquishment of the right must have

8   been voluntary in the sense that it was the product of a free and deliberate

9   choice rather than intimidation, coercion, or deception.")

10      The court here thought that any attack on the circumstances surrounding

11  petitioner's statement and its reliability was an attack on the court's prior

12  finding that the statement was voluntary.  In a colloquy with defense counsel,

13  the court revealed much of its confusion: it thought that reliability addressed

14  only the question whether the confession occurred as the police reported, and

15  that where, as here, the confession is recorded, reliability is not an issue.

16  RT 2635 ("But the tape pretty much precludes any kind of realistic assault

17  on that"), 2637-38.

18      The California Court of Appeal upheld the trial court in a decision that

19  avoided petitioner's argument and cannot withstand scrutiny.  Opinion at 27-

20  31.  That court rejected petitioner's argument merely by distinguishing this

21  case from Crane.  In so doing, the court ignored petitioner's arguments that

22  the trial court erred in instructing the jury that petitioner's statements

23  were voluntary, and that the police were entitled to lie.  It simply refused

24  to address these specific contentions and whether they in fact are contrary

25  to Crane's holding allowing a defendant to attack the reliability of a statement.

26      The error violated petitioner's due process and Sixth Amendment right

27  to present a defense.  Crane, supra, 476 U.S. at 690.  The error was prejudicial

28  under Brecht, 507 U.S. at 637, and the state court's finding with regard to

-9-

1  this claim was objectively unreasonable under 28 U.S.C. §2254(d).  Accordingly,

2  petitioner is entitled to habeas relief.

3

4                                GROUND FOUR

5                      INEFFECTIVE ASSISTANCE OF COUNSEL:
        FAILURE TO MOVE TO STRIKE A PRIOR SERIOUS FELONY CONVICTION
6       IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION

7        In order to prevail on this claim of ineffective assistance of counsel,

8  petitioner must demonstrate that (1) trial counsel's performance was deficient,

9  and (2) the deficient performance prejudiced the defense.  Strickland v.

10 Washington, 466 U.S. 668, 687 (1984).  Below, petitioner will show that

11 counsel's attempts to convince the trial court to strike the 1980 prior "strike"

12 conviction "fell below an objective standard of reasonableness" of

13 representation.  Id. at 688.  Thereafter, petitioner will demonstrate that,

14 had counsel acted consistently with prevailing professional norms, he could

15 have successfully moved to strike the prior under either one or both of two

16 clearly established legal theories, an outcome of the proceeding sufficiently

17 different to satisfy the second prong of the controlling test.  Id. at 694.

18       Among defense counsel's duties evaluated under the performance prong of

19 the Strickland test is the "duty to bring to bear such skill and knowledge as

20 will render the trial a reliable adversarial testing process."  Id. at 688.

21 The aspect of the trial relevant here is the motion to strike a prior conviction

22 which counsel was entitled by state law to make in the trial court.  See People

23 v. Allen, 21 Cal.4th 424, 435, 440 (1999).  As will be shown below, counsel's

24 litigation of the motion to strike was so objectively unreasonable that it

25 can be explained only by complete ignorance of the applicable law.

26       The supporting facts show that counsel attempted to challenge the prior

27 conviction twice.  The written notice of counsel's in limine motion and its

28 supporting memorandum of points and authorities unequivocally asked the trial

                                    -10-

1  court to strike the 1980 Penal Code §245(a) conviction on the ground of "in-

2  sufficiency of the evidence to prove that the prior conviction was a strike."

3  CT 282-284.  By California law, an assault with a deadly weapon is a serious

4  felony, i.e., a "strike" within the meaning of the Three Strikes law (Cal. P.C.

5  §§ 667(a)(1)&(d)(1), 1192.7(c)(31)); the abstract of judgment in the 1980

6  proceedings reflected a conviction of "assault deadly weap" (CT 495); such

7  an unambiguous notation in an abstract of judgment constitutes sufficient

8  evidence of a "strike" prior (People v. Rodriguez, 17 Cal.4th 253, 261 (1998));

9  therefore, it would have been objectively unreasonable for any competent

10  attorney to attempt to raise a sufficiency of the evidence challenge to the

11  1980 conviction.  Nevertheless, that is precisely what counsel's argument at

12  the hearing on this motion amounted to: although counsel did refer to the intent

13  of the parties, the only explicit legal ground for the motion to strike was

14  that of insufficient evidence.  RT 334-345.  Not surprisingly, the trial court

15  pointed out that defense counsel's own authorities defeated his argument, and

16  found the evidence sufficient to support the finding of a "strike" prior.

17  RT 348-355, 361.

18      Counsel's second attempt, made after petitioner had been found guilty

19  of the substantive charge of murder, was in no way more reasonable and showed

20  the same fundamental lack of understanding of the applicable law.  Counsel's

21  confusion is evident from the trial memorandum he filed with the court: he

22  gave notice of his intention to prove that petitioner had not been convicted

23  of violating "Section 245(A) of the Penal Code on April 1, 1980" (CT 837);

24  admitted that petitioner had pled guilty to, and was convicted of, a violation

25  of §245(a) in the 1980 proceeding (CT 838); argued that petitioner's 1980

26  counsel Harriet Ross was ineffective because she did not ensure that conviction

27  was properly recorded by the rendering court (CT 839-840); and concluded that,

28  because "the allegation that the defendant committed the assault with a deadly

-11-

1  weapon" had been stricken by the rendering court, "there was a complete failure

2  of proof by the [P]eople that this was a serious felony within the meaning

3  of the law" (CT 840).   The relevant facts, and counsel's own admission, show

4  that petitioner had in fact been convicted of a violation of California Penal

5  Code §245(a), which in 1980 included assault with and without a deadly weapon.

6  CT 495, 838; see Ann. Cal. P.C. §245.   A claim of ineffective assistance of

7  Ms. Ross was not cognizable in the trial court.   Custis v. United States, 511

8  U.S. 485 (1994); Garcia v. Superior Court, 14 Cal.4th 953, 963 (1997).   The

9  statement that an allegation of use of a deadly weapon had been stricken was

10  simply false.   Cf. CT 294.   Thus, it is not surprising that the trial court

11  chose to construe counsel's argument as another attempt to challenge the

12  sufficiency of the evidence, and made the obvious ruling thereon.   RT 3376.

13       In sum, the supporting facts show that (1) counsel attempted to utilize

14  the fact that petitioner entered into the 1980 plea agreement with the under-

15  standing that he was pleading to an assault with force likely to produce great

16  bodily injury, and (2) the only legal conclusions counsel drew from that fact

17  were patently inapplicable or procedurally barred, resulting in denial of his

18  motions.   Accordingly, counsel's decision to pursue those legal arguments can

19  be explained only by his ignorance of the law, making his performance un-

20  reasonable "under prevailing professional norms."   Strickland, 466 U.S. at 688.

21       In order to prevail on the prejudice prong of the Strickland test,

22  petitioner "must show that there is a reasonable probability that, but for

23  counsel's unprofessional errors, the result of the proceeding  would have been

24  different."   Id. at 694.   "In making the determination whether the specified

25  errors resulted in the required prejudice, a court should presume ... that

26  the judge or jury acted according to law."   Ibid.   Below, petitioner will show

27  that the circumstances of his 1980 conviction, viewed from the standpoint of

28  two discrete legal concepts, demand the dismissal of the "strike" allegation.

1  The presumption that the trial court would have followed the law had counsel

2  raised the appropriate legal challenges makes the probability of a different

3  outcome (and a significantly lower sentence) objectively reasonable under

4  Strickland, 466 U.S. at 693-695.

5

6  <center>(a) THE PLEA TO ASSAULT WITH A DEADLY WEAPON<br>WAS NOT VOLUNTARY AND INTELLIGENT</center>

7      "A guilty plea operates as a waiver of important rights, and is valid

8  only if done voluntarily, knowingly and intelligently, 'with sufficient aware-

9  ness of the relevant circumstances and likely consequences.' Brady v. United

10  States, 397 U.S. 742, 748 (1970). Where defendant pleads guilty to a crime

11  without having been informed of the crime's elements, this standard is not

12  met and the plea is invalid. Henderson v. Morgan, 426 U.S. 637, 645 (1976)."

13  Bradshaw v. Stumpf, 545 U.S. __, 125 S.Ct. 2398, 2405 (2005). The courts

14  usually rely on defense counsel to inform the defendant "of the nature and

15  elements of the charge to which he is pleading guilty" and presume that the

16  defendant voluntarily and intelligently pled to the charge so explained to

17  him by counsel. Id., 125 S.Ct. at 2406; Henderson, 426 U.S. at 647. If, how-

18  ever, the record shows that neither the defndant nor his attorney correctly

19  understood the essential elements of the charge, the guilty plea is invalid

20  under the Due Process Clause of the Fourteenth Amendment. Bousley v. United

21  States, 523 U.S. 614, 619 (1998).

22      A claim that the plea was invalid under Henderson, supra, can be properly

23  raised in the trial court in a motion to strike a prior conviction pursuant

24  to People v. Sumstine, 36 Cal.3d 909, 916 (1984). People v. Dolliver, 181

25  Cal.App.3d 49, 60-61 (1986). Such a motion challenging the voluntariness of

26  the plea that resulted in the prior conviction can be supported by the record

27  of the prior proceeding as well as by evidence outside that record. People

28  v. Allen, supra, 21 Cal.4th at 440.

<center>-13-</center>

1    The supporting facts show that when petitioner entered his guilty plea

2  on April 1, 1980, he, his attorney, and the trial court believed that he was

3  pleading guilty to assault with force likely to produce great bodily injury.

4  According to the direct evidence in the record, that was the charge of whose

5  "elements," "possible defenses," and "legal consequences" counsel informed

6  petitioner (CT 288-289); the court advised petitioner that by changing his

7  plea he would be "subjecting [him]self to conviction on the underlying offense

8  as set forth by Miss Ross" (CT 291)(emphasis added), and asked petitioner to

9  acknowledge the truth of "the statements made to the Court by [his] counsel"

10  (CT 292).  The prosecutor did not object to counsel's identification of the

11  charge nor to the court's reliance thereon.  CT 288-294.  In addition to the

12  record evidence, both Ms. Ross and petitioner declared under penalty of perjury

13  (and thus, presumptively, would have testified at the hearing in the trial

14  court) that petitioner's guilty plea was based on the understanding that the

15  charge he would be convicted of was that of assault with force likely to

16  produce great bodily injury, not assault with a deadly weapon.  See Petition

17  Exhibits A, B.

18    There is no evidence that petitioner, who was in need of psychiatric

19  help at the time (CT 290; cf. Henderson, 426 U.S. at 645-646), was given any

20  notice that--contrary to his attorney's explanation, openly endorsed by the

21  court and not contradicted by the prosecutor--his guilty plea would result

22  in a conviction of assault with a deadly weapon.  Accordingly, his plea was

23  neither voluntary nor knowing and intelligent, the 1980 conviction was obtained

24  in violation of due process, and the serious felony enhancement allegation

25  in the trial court was subject to being stricken upon a motion supported by

26  the facts and the law outlined above.

27                (b) THE 1980 PLEA AGREEMENT WAS VIOLATED

28    Plea agreements are contractual in nature and are measured by contract

-14-

1  law standards. United States v. Keller, 902 F.2d 1391, 1393 (9th Cir. 1990).

2  The terms of oral plea agreements are enforceable as are those of any other

3  contract. See, e.g., United States v. Monreal, 301 F.3d 1127, 1133 (9th Cir.

4  2002). In this context, state contract law is controlling. Buckley v.

5  Terhune, 441 F.3d 688, 694-695 (9th Cir. 2006)(en banc); see also Ricketts

6  v. Adamson, 483 U.S. 1, 6 (1987)(holding that the interpretation of state plea

7  agreements is a matter of state law).

8       Under California law, a contract must be interpreted so as "to give

9  effect to the mutual intention of the parties as it existed at the time of

10  contracting" (Cal. Civil C. §1636), and any ambiguity in the agreement should

11  be resolved in petitioner's favor (Buckley, 441 F.3d at 698).

12       "When a plea rests in any significant degree on a promise or agreement

13  of the prosecutor, so that it can be said to be part of the inducement or con-

14  sideration, such promise must be fulfilled." Santobello v. New York, 404 U.S.

15  257, 262 (1971). What induced the plea is an objective inquiry: "Where it

16  is clear from context what would reasonably have prompted acceptance of the

17  agreement, even in part, no further speculative factual inquiry is needed."

18  Brown v. Poole, 337 F.3d 1155, 1160 (9th Cir. 2003), citing INS v. St. Cyr,

19  533 U.S. 289, 322-323 (2001).

20       As shown by the transcript of the April 1, 1980, change of plea

21  proceeding, petitioner's attorney Harriet Ross stated to the court that the

22  plea agreement being offered to petitioner was the "result of discussions with

23  the District Attorney and the Court" (CT 289), and consisted of petitioner

24  pleading guilty to "assault with means likely to produce great bodily injury

25  a violation of section 245A" of the California Penal Code (CT 288). Before

26  finalizing and accepting the plea agreement, the court confirmed that all of

27  the statements made by Ms. Ross were true (CT 292), and that petitioner's change

28  of plea would "subject[] [petitioner] to conviction on the underlying offense

-15-

1   as set forth by Miss Ross" (CT 291).

2   It cannot reasonably be disputed that the transcript of the 1980 change

3   of plea demonstrates that the intent of the parties at that time was that,

4   in exchange for petitioner's plea of guilty to assault with force likely to

5   produce great bodily injury in violation of Penal Code §245(a), the prosecutor

6   would rescind the original charge of assault with a deadly or dangerous weapon,

7   a gun, strike the special allegation of personal use of a firearm inherent

8   in that charge, and dismiss the remaining charges.

9   Under California law, an assault committed "by any means of force likely

10  to produce great bodily injury" is not a "strike" (Williams v. Superior Court,

11  92 Cal.App.4th 612 (2001)), and it does not qualify as a serious felony for

12  purposes of imposing a 5-year enhancement under Penal Code §667(a)(1).

13  In Davis v. Woodford, No. 05-55164, 2006 DJDAR 5033, 5035 (9th Cir. 2006)

14  the court held "that the state must live with the particular bargain it made."

15  The trial court violated petitioner's 1980 plea agreement by counting the prior

16  conviction as a serious felony under the Three Strikes law and Penal Code

17  §667(a)(1), and adding 20 years to life to petitioner's sentence as a result.

18  Trial counsel's motion to strike the prior conviction on either of these

19  two grounds was reasonably likely to succeed.  Accordingly, counsel was

20  prejudicially ineffective, the state courts' denial of this claim was an un-

21  reasonable application of Strickland, and petitioner is entitled to relief.

22

23  GROUND FIVE

24  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL: FAILURE TO RAISE THE ISSUE
    OF IMPROPER DENIAL OF MOTION TO STRIKE THE PRIOR CONVICTION
25  IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

26  The Due Process Clause of the Fourteenth Amendment guarantees a criminal

27  defendant effective assistance of counsel on his first appeal as of right.

28  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  The standard for measuring

1  a claim of ineffective assistance of appellate counsel is the two-prong test

2  set forth in Strickland v. Washington, supra: petitioner must prove that his

3  counsel's performance fell below an objective standard of reasonableness and,

4  but for counsel's unprofessional errors, there is a reasonable probability

5  that petitioner would have prevailed on appeal. Id., 466 U.S. at 688, 694;

6  see Miller v. Keeney, 882 F.2d 1428, 1433-34 (9th Cir. 1989). The likelihood

7  of success of the underlying claim can be evaluated under the federal

8  Constitution or state law. Miller, 882 F.2d at 1435.

9      As shown by the supporting facts, petitioner's trial counsel's attempts

10  to litigate the motion to strike the prior conviction allegation included the

11  mention of petitioner's, his attorney's and, generally, the parties' intent

12  to enter a plea of guilty to assault with force likely to produce great bodily

13  injury. RT 334-335; CT 283, 839, 840. Although largely incoherent and

14  expressly based on improper legal grounds, counsel's arguments did invite the

15  trial court to decide whether the record of the 1980 change of plea proceeding

16  showed that a conviction of assault with a deadly weapon was contrary to the

17  parties' intent and/or petitioner's understanding of the nature of the charge

18  to which he was pleading guilty.

19      If this Court finds that trial counsel thereby fulfilled his obligations

20  and, accordingly, denies the claim raised in Ground Four of the Petition,

21  petitioner respectfully submits that such finding would necessarily mean that

22  appellate counsel's failure to raise the claim of improper denial of the motion

23  to strike the prior based on the violation of the plea agreement and an in-

24  voluntary guilty plea amounted to prejudicially ineffective assistance. If

25  trial counsel did not fail in his duties, then this claim was cognizable on

26  direct appeal:

27          As a general matter, no useful purpose is served by declining
            to consider on appeal a claim that merely restates, under
28          alternative legal principles, a claim otherwise identical to

-17-

1    one that was properly preserved by a timely motion that called
     upon the trial court to consider the same facts and to apply a
2    legal standard similar to that which would also determine the
     claim raised on appeal.
3    People v. Yeoman, 31 Cal.4th 93, 117 (2003).

4        Appellate counsel could have addressed the claims essentially identical

5    to those outlined in Ground Four of this Petition by complaining of the trial

6    court's improper denial of, or refusal to conduct a hearing on, a motion to

7    strike a prior conviction authorized by People v. Allen, supra, 21 Cal.4th

8    at 440, and People v. Sumstine, supra, 36 Cal.3d at 916. As noted in the

9    supporting facts, the trial court stated that such a motion could have been

10   raised only in the rendering court (RT 356, 358, 361); since Allen expressly

11   held otherwise, controlling law would have mandated reversal of that ruling,

12   while the implicit ruling on the merits of the underlying claims would have

13   been reversed for the reasons stated in Ground Four ante and incorporated by

14   reference herein.

15       Accordingly, appellate counsel was ineffective, state courts' denial

16   of this claim was objectively unreasonable (28 U.S.C. §2254(d)), and

17   petitioner is entitled to relief.

18

19                           GROUND SIX

20           INEFFECTIVE ASSISTANCE OF COUNSEL: FAILURE TO OBJECT
          TO INTRODUCTION OF INADMISSIBLE EVIDENCE OF VICTIM'S CHARACTER
21           IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS
                     TO  THE UNITED STATES CONSTITUTION
22

23       As stated above, in order to prevail on a claim of ineffective

24   assistance of counsel, petitioner must show that counsel's performance was

25   deficient and the deficiency was prejudicial. Strickland, 466 U.S. at 687-

26   688, 694.

27       At issue here is the admission of evidence of the victim's character

28   or trait of character for non-violence whose only conceivable relevance was

                              -18-

1  to show that on the night he was killed he acted in conformity with that general

2  character, i.e., did not violently assault petitioner and force the latter

3  to defend himself with lethal force.  California Evidence Code §1101(a) states

4  the following:

> Except as provided in this section and in Sections 1102, 1103,
> 1108, and 1109, evidence of a person's character or trait of
> his or her character (whether in the form of an opinion,
> evidence of reputation, or evidence of specific instances of
> his or her conduct) is inadmissible when offered to prove his
> or her conduct on a specified occasion.

9  Of the sections listed therein, only §1103 mentions a victim's character:

> (a) In a criminal action, evidence of the character or a
> trait of character ... of the victim of the crime for which
> the defendant is being prosecuted is not made inadmissible by
> Section 1101 if the evidence is:
> (1) Offered by the defendant to prove conduct of the victim
> in conformity with the character or trait of character.
> (2) Offered by the prosecution to rebut evidence adduced by
> the defendant under paragraph (1).

15  This exception is inapplicable because in petitioner's trial no evidence of

16  George Celentano's character was adduced by petitioner.  As shown by the

17  supporting facts, petitioner sought to introduce evidence of the victim's acts

18  of violence under this section; however, the trial court deferred its ruling

19  until after petitioner testified (RT 448), and then refused to allow petitioner

20  to support his defense with such evidence (RT 3021-23; see also facts in support

21  of Ground One).  By then, all of the prosecution's evidence of the victim's

22  non-violent character had already been presented to the jury.

23  "[A] court deciding an actual ineffectiveness claim must judge the

24  reasonableness of counsel's challenged conduct on the facts of the particular

25  case, viewed as of the time of counsel's conduct."  Strickland, 466 U.S. at

26  690.  Viewed in such a manner, an objectively reasonable course of action for

27  a competent attorney representing petitioner would have been as follows: (1)

28  once the trial court deferred its ruling regarding introduction of defense

-19-

1  evidence (thus indicating that it may ultimately be denied), object to any

2  prosecution evidence of the victim's character as inadmissible under California

3  Evidence Code §1101(a) until and unless the court admits defense evidence that

4  would qualify under §1103(a)(1); (2) if the objections to the prosecution

5  evidence are overruled, after the court made its final ruling excluding the

6  defense evidence, move for a mistrial and/or request an instruction directing

7  the jurors not to consider the evidence of the victim's non-violent character

8  for any purpose.  Petitioner's trial counsel did neither, leaving the in-

9  admissible evidence unchallenged and the claim of its improper admission for-

10 feited for appeal.  This omission fell below the standard of "reasonably

11 effective assistance" which governs the first prong of the Strickland test.

12 Id., 466 U.S. at 687.

13      The ultimate question in any ineffective-assistance claim is "whether

14 counsel's conduct so undermined the proper functioning of the adversarial

15 process that the trial cannot be relied on as having produced a just result."

16 Id. at 692-693.  "The result of the proceeding can be rendered unreliable,

17 and hence the proceeding itself unfair, even if the errors of counsel cannot

18 be shown by a preponderance of the evidence to have determined the outcome."

19 Id. at 694.

20      Petitioner respectfully submits that the prejudice prong of the Strickland

21 test can be satisfied even if the effect of the improperly admitted evidence

22 is viewed in isolation.  As noted in the supporting facts, petitioner's defense

23 at the trial was that he had killed Celentano while defending himself from

24 an unprovoked attack.  The California Court of Appeal aptly identified the

25 major problem with that defense: petitioner "was considerably bigger, stronger,

26 and younger than Celentano, a 67-year old alcoholic and heroin addict who,

27 though sometimes verbally abusive, was not known for being physically aggressive

28 or violent."  Opinion at 26.  Petitioner testified that Celentano had attacked

-20-

1  him with a knife.  RT 2834-35.  The jury was instructed that a person attacked

2  in such a manner could lawfully kill the assailant and did not need to retreat

3  even if the assailant was not actually capable of inflicting great bodily

4  injury.  CT 773, 775, 778, 779.  Accordingly, the fact that petitioner was

5  16 years younger and in better physical shape than the victim was of almost

6  no relevance to the success of petitioner's defense: if the jury believed

7  petitioner's testimony describing the initial armed assault by Celentano, it

8  was reasonably likely to find self-defense.  This is where the remainder of

9  the Court of Appeal's summary becomes critically important: the jury was told

10  that the victim "was not known for being physically aggressive or violent"

11  (Opinion at 26); therefore, he was not likely to have assaulted petitioner

12  in the manner described in petitioner's testimony.  Since the evidence of

13  celentano's non-violent character and reputation was inadmissible as a matter

14  of law, its direct effect on the central issue at the trial rendered the trial

15  unfair and its result unjust.  See Strickland, 466 U.S. at 694.

16      Moreover, the determination of prejudice under Strickland requires a

17  consideration of "the totality of the evidence before the judge or jury."

18  Id. at 695.  Viewed differently, the prejudice from this error can be properly

19  assessed not in artificial isolation but as part of the evaluation of the entire

20  adversarial proces at petitioner's trial.  See, e.g., Parle v. Runnels, 387

21  F.3d 1030, 1045 (9th Cir. 2004)(cumulative effect of errors can render the

22  trial unfair).  As noted in Ground One, the state Court of Appeal found error

23  in exclusion of evidence that Celentano became violent while withdrawing from

24  alcohol.  Opinion at 25.  The court noted that this was the only evidence that

25  would have corroborated petitioner's "sole theory to support an acquittal."

26  Ibid.  Thus, the jury was to weigh petitioner's theory of defense, erroneously

27  deprived of corroboration, against the prosecutor's theory of the case,

28  erroneously supported by evidence that undermined the most fundamental aspect

-21-

1  of the defense.  In other words, the cumulative effect of the two errors was

2  to enable the prosecutor to show that Celentano had never attacked anyone in

3  at least 25 years and thus was not likely to have attacked petitioner, while

4  at the same time denying petitioner the opportunity to show that the victim

5  was prone to fits of irrational violence while experiencing alcohol withdrawal

6  as recently as within 1½ years before he was killed, and thus likely assaulted

7  petitioner while suffering from the same condition.  This did more than under-

8  mine the credibility of petitioner's testimony: in effect, the trial lost its

9  adversarial character and the prosecutor was allowed to make his case unopposed.

10 This violated the concept of fundamental fairness inherent in the

11 constitutional guarantee of due process and rendered the outcome of the trial

12 unreliable within the meaning of Strickland, 466 U.S. at 694.

13     Accordingly, counsel's failure to object to introduction of evidence

14 of the victim's character or to request a jury instruction precluding

15 consideration thereof was prejudicial within the meaning of Strickland, the

16 state courts' resolution of this claim was objectively unreasonable, and

17 petitioner is entitled to habeas relief.

18

19                          CONCLUSION

20     For all the foregoing reasons, petitioner respectfully submits that he

21 is entitled to an evidentiary hearing and habeas corpus relief on the claims

22 raised in the Petition.

23     DATED: May 18, 2008

24

25                                    Respectfully submitted,

26                                    Michael J. Connolly

27

28

California State Prison - Solano

MICHAEL CONNOLLY
P-52999 1-217
C.S.P. SOLANO, P.O. BOX 4000
VACAVILLE, CA. 95696

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
450 GOLDEN GATE AVE.
SAN FRANCISCO, CA. 94102-3483

prop

PRIORITY
MAIL
UNITED STATES POSTAL SERVICE ™
www.usps.gov

LABEL107R, OCT 1997